

# THE STATE OF TENNESSEE, MADISON COUNTY
## CIRCUIT COURT

| | |
|---|---|
| **FAITH DELIVERANCE CENTER,** | **SUMMONS IN A CIVIL ACTION** |
| Plaintiff, | NO. C-14-168 Div III |
| vs. | Address: |
| **SOUTHERN MUTUAL CHURCH INSURANCE COMPANY and TENCO SERVICES, INC.,** | SOUTHERN MUTUAL CHURCH INSURANCE COMPANY<br>500 James Robertson Parkway<br>Nashville, TN 37243-0565 |
| Defendants. | **PLEASE SERVE THROUGH THE COMMISSIONER OF INSURANCE** |

To the above named Defendant(s):

You are hereby summoned and required to answer, in writing, the complaint which is herewith served upon you, and to serve a copy of same upon **Clinton H. Scott, Gilbert Russell McWherter Scott & Bobbitt PLC**, who is Plaintiff's Attorney, whose address is **101 North Highland, Jackson, TN 38301**, within thirty (30) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, a judgment by default will be taken against you for the relief demanded in the complaint.

Issued this **7th** day of **July**, 2014.

By: _____
Deputy Clerk

---

### RETURN ON SERVICE OF SUMMONS

I hereby certify and return, that on the _____ day of _____, 2014, I served this summons together with a copy of the complaint herein as follows: _____

_____
_____
_____

_____
Sheriff

_____
Deputy Sheriff

IF YOU HAVE A DISABILITY AND REQUIRE ASSISTANCE, PLEASE CALL 731-988-3070

**EXHIBIT 1**



THE STATE OF TENNESSEE, MADISON COUNTY
CIRCUIT COURT

| | |
|---|---|
| **FAITH DELIVERANCE CENTER,** | **SUMMONS IN A CIVIL ACTION** |
| Plaintiff, | NO. C-14-168 Div III |
| vs. | Address: |
| **SOUTHERN MUTUAL CHURCH INSURANCE COMPANY and TENCO SERVICES, INC.,** | TENCO SERVICES, INC. c/o Registered Agent Edward T. Moss 3310 West End Ave., Suite 465 |
| Defendants. | Nashville, TN 37203-6861 |

To the above named Defendant(s):

You are hereby summoned and required to answer, in writing, the complaint which is herewith served upon you, and to serve a copy of same upon **Clinton H. Scott, Gilbert Russell McWherter Scott & Bobbitt PLC,** who is Plaintiff's Attorney, whose address is **101 North Highland, Jackson, TN 38301,** within thirty (30) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, a judgment by default will be taken against you for the relief demanded in the complaint.

Issued this **7th** day of **July**, 2014.

By: _____
Deputy Clerk

---

### RETURN ON SERVICE OF SUMMONS

I hereby certify and return, that on the _____ day of _____, 2014, I served this summons together with a copy of the complaint herein as follows: _____

_____
_____
_____

_____
Sheriff

_____
Deputy Sheriff

IF YOU HAVE A DISABILITY AND REQUIRE ASSISTANCE, PLEASE CALL 731-988-3070



FILED
JUL 07 2014

IN THE CIRCUIT COURT FOR MADISON COUNTY, TENNESSEE
AT JACKSON

KATHY BLOUNT, CIRCUIT COURT CLERK
DEPUTY CLERK

FAITH DELIVERANCE CENTER,

Plaintiff,

v.

Case No. C-14-168
JURY DEMAND Div III

SOUTHERN MUTUAL CHURCH
INSURANCE COMPANY and
TENCO SERVICES, INC.,

Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Faith Deliverance Center, and for its Complaint against Southern Mutual Church Insurance Company and Tenco Services, Inc. would state and show as follows:

### PARTIES AND JURISDICTION

1.  Faith Deliverance Center (the "Church") is a Tennessee non-profit corporation, with its principal place of business (a house of worship) located at 2842 Old Medina Road, Jackson, Tennessee (the "Insured Premises").

2.  Southern Mutual Church Insurance Company ("Southern Mutual") is an insurance company conducting business in the State of Tennessee, with its principal place of business located at 201 Greenlawn Dr., Columbia, South Carolina.

3.  Tenco Services, Inc. ("Tenco") is a Tennessee corporation with its principal office at 3310 West End Ave., Suite 465, Nashville, Tennessee and other offices across the State,

including Jackson, Tennessee. Tenco is an adjusting firm that works for insurance companies to investigate and adjust insurance claims.

4. This Complaint originates as the result of a storm event that damaged the improvements and other property located at the Insured Premises, and Defendants' unlawful actions in refusing to properly investigate, adjust, and pay the Church's claim and Southern Mutual's later refusal to abide by an Appraisal Award issued to the Church pursuant to the appraisal provision of the insurance policy at issue

5. Jurisdiction and venue are proper in this Court.

## FACTS

6. At all times relevant hereto, the Church was an insured policyholder in an insurance contract whereby Southern Mutual agreed to insure the Insured Premises against property damage, being Policy No. SMP 0064697 00 (the "Policy"). The Policy is incorporated herein by reference as if set forth verbatim.

7. At all times relevant hereto, the Insured Premises consisted of a large structure used and maintained as a place of worship and fellowship by members and guests of the Church.

8. The Policy provided insurance coverage for losses to the Insured Premises caused by wind, hail, and water.

9. Pursuant to the Policy and at all times relevant to this Complaint, the Church paid a premium to Southern Mutual in exchange for insurance coverage as set forth in the Policy. The Church paid the required premiums at all times relevant to this Complaint.

10. On or about May 30, 2013, the church located at the Insured Premises was damaged by wind, hail, and associated water damage as the result of a storm event that hit the area (the "Loss").

11. The Church took immediate action to mitigate their losses, and promptly reported the Loss to Southern Mutual.

12. On or about June 25, 2013, Southern Mutual hired the adjusting firm of Tenco Services, Inc. to adjust and investigate the Loss. Tenco assigned its employee, Randy Sellers, to adjust the claim. Sellers conducted an initial inspection on June 26, 2013 and returned on July 2, 2013 accompanied by Martin Ellison of Donan Engineering. Ellison and Sellers identified hail and wind damaged shingles during the inspection, as well as water-damaged carpeting, pew cushions, and other interior components of the structure. Sellers represented to the Church that the claim was compensable and the roof and soft metals needed to be replaced. Sellers also acknowledged the damage to the interior of the church. Sellers indicated the cost of replacing the shingles alone would be around $60,000, and promised that Southern Mutual would pay to replace the roof.

13. Thereafter, Sellers was removed from the claim by Tenco and/or Southern Mutual, and Tenco branch manager B.J. Richardson assumed responsibility for the claim. Ms. Richardson offered a settlement offer to the Church of approximately $28,000. The Church disagreed with the offer, and asked if it included all of the necessary repairs, including the interior. Ms. Richardson advised that it included all the damage, including the interiors, and told the Church's pastor, Dr. Charles Wallace, that he would have to come by and sign a release in order to obtain the payment. Dr. Wallace declined to sign a release and asked that Ms. Richardson meet him at the church to review the damage and estimate, which had not been provided to the Church. Ms. Richardson refused to meet Dr. Wallace at the church, and refused to provide the Church with the estimate on which the settlement offer was allegedly based.

14. There were no leaks at the Insured Premises prior to the Loss. After the Loss, the Church was forced to conduct church services with buckets out to collect leaks. The Church did everything within its financial ability to mitigate its losses, including but not limited to replacing temporary roof tarping at least seven times in an effort to stop leaks caused by the Loss.

15. As a result of Southern Mutual and Tenco's failure to promptly adjust and investigate the Loss and pay the claim, the damage at the Insured Premises continued to worsen, ultimately resulting in substantial damage (staining, separation, etc.) to the tongue and groove wood ceiling in the sanctuary, buckling of the roof decking, and water saturation of significant portion of the exterior and interior components of the structure, all of which occurred as a result of, and was a part of, the Loss.

16. The Policy was in full force and effect at the time of the Loss, and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

17. After the Loss, the Church fulfilled all duties imposed upon it by the Policy.

18. Southern Mutual has admitted and represented to the Church that the Loss was a compensable claim, and a portion of Southern Mutual's claim as a result of the Loss has in fact been paid.

19. A dispute arose between the Church and Southern Mutual as to the amount of the Loss. Accordingly, the Church demanded appraisal pursuant to the appraisal provision of the Policy.

20. The Policy's appraisal provision provides:

> **Appraisal.** If 'you' and 'we' do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

> If either makes a written demand for appraisal, each selects a competent, independent appraiser and notifies the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraiser then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, 'you' or 'we' can ask a judge of a court of record in the state where the property is located to select an umpire.
>
> The appraisers then determine and state separately the amount of each loss.
>
> The appraiser also determine the actual cash value of covered property items at the time of the loss, if requested.
>
> A written agreement is binding on all parties. If the appraisers fail to agree within a reasonable time, they submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three is binding on all parties.
> Each appraiser is paid by the party selecting that appraiser. Other expense of the appraisal and the compensation of the umpire is paid equally by 'you' and 'us'.
> If there is an appraisal 'we' retain 'our' right to deny the claim.

21. The Church appointed Toby Johnson as its appraiser, and Southern Mutual chose Robert Warren as its appraiser. The appraisers chose William Escue as the umpire under the appraisal provision of the Policy.

22. An Appraisal Award was made on March 18, 2014. The Appraisal Award was signed by Appraiser Toby Johnson and Umpire William Escue. A copy of the Appraisal Award is attached hereto as **Exhibit "A"**.

23. The Appraisal Award provided that the amount of loss resulting from the Loss was as follows;

|  | RCV | ACV |
|---|---|---|
| Building | $384,956.81 | $362,908.70 |
| Extra Expense/Loss of Use | $10,000 | $10,000 |

The Appraisal Award further stated, "We do hereby certify that the cause of loss for all appraised damages is damage due to Wind/Hail with subsequent water damage."

24. The amount of the Loss, as set by the Appraisal Award, is binding on the Church and Southern Mutual.

25. In Tennessee, an appraisal panel's decision regarding the scope of a particular loss are binding on the insured and insurer. Scope is a necessary component in determining the "amount of loss" pursuant to the appraisal provision of a policy of insurance. Unless the appraisers and umpire are permitted to determine the scope of the loss, i.e., the extent of damage caused by the covered event, there is no way for them to accurately determine the amount of the loss. The "amount of loss" cannot be calculated without first determining both the extent of damage (scope) and the cost of repairs.

26. The Appraisal Award did not include any items that are not excluded by the Policy's coverage provisions. There is no coverage issue, but rather a disagreement as to the amount of the loss. Southern Mutual misinterprets the phrase "amount of the loss" to mean only the dollar amount of undisputed covered damage. In essence, it is Southern Mutual's position that a failure to reach an agreement as to what damages were caused by the loss gives rise to a coverage issue, a matter not ripe for appraisal. Case law from around the country and insurance scholars agree that in order to determine the amount of loss, one must draw conclusions as to the extent of damage to the property which is the subject of the appraisal and the amount, extent, and cost of remediation or replacement in order to fulfill the carrier's responsibility under the policy. The determination by the appraisers of whether a particular items falls within the general description of the property they are to appraise reflects the method of determining the loss rather than a matter of coverage, and any contrary reading would require the Court to conduct an item-by-item determination of exactly which losses fall within the scope of coverage and which items are excluded because they were the result of prior causes, a task properly taken by appraisers.

27. Southern Mutual is required by the Policy to make payment to the Church in the amount as set forth in the Appraisal Award and as otherwise owed to the Church. Southern Mutual refuses to do so, and to date has made two payments to the Church, totaling $151,457.50. Pursuant to the Policy, payment was due within 30 days after Southern Mutual's receipt of the Appraisal Award.

28. Southern Mutual has not provided a reasonable or justifiable basis for refusing to pay the Appraisal Award.

29. Southern Mutual's refusal to timely pay the Church the amount owed it pursuant to the Policy and the Appraisal Award is without justification.

30. Southern Mutual's refusal to pay the money and benefits due and owing the Church under the Policy has caused it to initiate this Complaint to recover the insurance proceeds to which it is entitled.

31. As a direct and proximate cause of Defendants' actions/inactions, the Church has sustained substantial compensable losses, including all amounts due the Church under the Policy and other such costs and expenses incurred as a result of Defendants' conduct.

## CAUSES OF ACTION

### Count I – Breach of Contract (against Southern Mutual)

32. The allegations contained in paragraphs 1-31 of this Complaint are incorporated herein by reference, as if set forth verbatim.

33. The Policy is a binding contract and is supported by valid consideration.

34. The Appraisal provision contained in the Policy is binding.

35. The amount payable to the Church pursuant to the Policy as a result of the Loss was set by the Appraisal Award. Every item included in the Appraisal Award was insured and covered by the Policy.

36. Southern Mutual is in total, material breach of the Policy and Southern Mutual is liable to the Church under the Policy for the Loss. Specifically, Southern Mutual's breach of contract includes without limitation, its failure and refusal to pay all of the Church's losses that were covered under the terms of the Policy, including, but not limited to, payments owed to the Church for all compensable claims under the Policy resulting from the Loss. Southern Mutual further breached the Policy by failing to make payment to the Church as required by the Appraisal Award.

37. Southern Mutual is responsible for the acts of its agents, including Tenco, and is estopped to deny liability for the actions, conduct, and promises of its agents.

38. As a result of Southern Mutual's breach of contract, the Church has sustained substantial compensable losses for the amounts claimed under the Policy and for the amounts as identified in the Appraisal Award, plus interest thereon.

39. Southern Mutual's actions and breaches have further caused the Church great and substantial harm due to the fact that it has been unable to replace much of the damage caused by the Loss as a result of the financial hardship unduly placed upon it as a direct and proximate result of Southern Mutual's failure to pay the Church the proper amounts as required by the Policy and Southern Mutual's refusal to honor and pay the Appraisal Award.

40. The Church has mitigated its losses to the extent possible.

41. Southern Mutual is liable to the Church for its losses.

42. Southern Mutual's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 2013 Tenn. App. LEXIS 712, *47 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Southern Mutual intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of the Church's claim when liability was clear; (2) refused and failed to conduct a reasonable investigation of the Church's claim; (3) unjustly refused to pay the Church's claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to make payments to the Church as required by the Appraisal Award; (5) refused and failed to even acknowledge the binding nature of the Appraisal Award; (6) failed to adopt, implement, and enforce reasonable standards for the prompt investigation and settlement of claims arising under its insurance policies; (7) failed to treat the Church's interests equal to that of its own; (8) attempted to coerce and trick the Church into accepting a payment amount that was substantially less than was owed in exchange for a release; (9) failed to promptly provide the Church with a reasonable explanation for its refusal to fully pay the Church's claim and the Appraisal Award; (10) failed to communicate with the Church to keep it apprised of the status of its claim; and (11) engaged in such other acts toward the Church that amount to acts of baseness, vileness, and/or depravity that are contrary to the duties owed to the Church.

### Count II – Negligence (against Southern Mutual and Tenco)

43. The allegations contained in paragraphs 1-42 of this Complaint are incorporated herein by reference, as if set forth verbatim.

44. Tenco is liable to the Church for negligence.

45. Tenco was hired by Southern Mutual to investigate and adjust the Loss. Tenco and its representatives, including but not limited to Randy Sellers and B.J. Richardson, owed the Church a duty to properly and promptly investigate and adjust the Church's claim associated with the Loss.

46. In providing the aforementioned services as an "independent adjuster," Tenco and its employees/agents/authorized representatives were acting within the ordinary course and scope of their business.

47. The standard of care applicable to Tenco required that it: (1) investigate the Loss and the claim submitted by the Church; (2) evaluate the Loss and make such inquiries as may be necessary to obtain sufficient information to assure that the Church received the full benefit of the Policy; (3) to convey accurate information to the Church concerning its claim and its rights under the Policy: (4) to refrain from any misleading statements to the Church concerning the Policy or the amount they are owed; (5) to act with reasonable skill, care, and diligence in investigating and adjusting the Church's claim; (6) to act in a reasonably prompt fashion; (7) to assist in the effectuation of a prompt, fair, and equitable settlement of the Church's claim; (8) to engage experts that are not biased toward the interests of insurance carriers; (9) to provide the Church with copies of all estimates concerning repairs necessary as a result of the Loss; (10) to meet with and communicate with the Church concerning its claim; and (11) to refrain from actions arising to the level of deceit or malice, such as attempting to coerce and trick the Church into signing a release before making payment.

48. Tenco breached the applicable standard of care, and each of the above duties. Additionally, Tenco was negligent in failing to adequate train and supervise its employees, for whose actions Tenco is liable.

49. As a result of Tenco's negligence, the Church was damaged.

50. Tenco's negligence is the cause-in-fact, legal, and proximate cause of the Church's damages.

51. Southern Mutual is vicariously liable for the actions, inactions, and representations of its agent and representative, Tenco, as set forth above, and is liable to the Church to the same extent as Tenco as set forth in this Count II, all of which is incorporated herein by reference and pled specifically against Southern Mutual.

WHEREFORE, as a result of the foregoing, the Church would respectfully request that proper process be issued and served on Southern Mutual requiring it to answer or otherwise respond in the time period allotted by law, and that this Honorable Court award judgment against Southern Mutual as follows:

A. For compensatory damages not to exceed $450,000.00;

B. For punitive damages not to exceed $4,000,000.00;

C. For all costs incurred as a result of this action;

D. For pre- and post-judgment and interest; and

E. For such other further and general relief as this Court deems just and equitable.

### JURY DEMAND

The Church demands a jury of its peers.

Respectfully submitted,

GILBERT RUSSELL McWHERTER
SCOTT & BOBBITT PLC

*/s/ Clint Scott*

J. BRANDON McWHERTER #21600
341 Cool Springs Blvd., Suite 230
Franklin, Tennessee 37067
(615) 354-1144
bmcwherter@gilbertfirm.com

and

CLINT H. SCOTT #23008
101 North Highland Ave.
Jackson, Tennessee 38301
(731) 664-1340
cscott@gilbertfirm.com

## COST BOND

The Firm stands as surety for this cause.

GILBERT RUSSELL McWHERTER
SCOTT & BOBBITT PLC

*/s/ Clint Scott*

# EXHIBIT A

## APPRAISAL AWARD

### Faith Deliverance Center

Claim No.:         40673
Policy No.:        SMP 0064697 00
Date of Loss:      05/30/13
Location of Loss:  2842 Old Medina Rd. Jackson, TN 38305

We, the undersigned, pursuant to the within appointment, DO HEREBY CERTIFY that we have truly and conscientiously performed the duties assigned us, agreeable to the foregoing stipulations, and have appraised and determined and do hereby award as to the amount of loss due to Wind/Hail/Water, which occurred on or about the 30th, May 2013; the following values:

| Amount of Loss | RCV | ACV |
|---|---|---|
| Building | $384,956.81 | $362,908.70 |
| Extra Expenses/Loss of Use | $10,000.00 | $10,000.00 |

Witness our hands this 18th day of March 2014.

**WE DO HEREBY FURTHER CERTIFY that the cause of loss for all appraised damages is damage due to Wind/Hail with subsequent water damages.**

This award is made without consideration for any prior partial payments or advanced payments made to the Insured under the above coverage's or the deductible.

**WE DO HEREBY AWARD the forgoing sums as our Appraisal Award.**

_____
Robert D. Warren
Appraiser for Carrier

_____
Toby J. Johnson
Appraiser for Insured

_____
William Escue - Umpire