IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

FAITH DELIVERANCE CENTER,

    Plaintiff,

v.                                            No. 14-1183

SOUTHERN MUTUAL CHURCH
INSURANCE CO. and TENCO
SERVICES, INC.,

    Defendants.

_____

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND
DENYING DEFENDANTS' MOTION TO DISMISS
_____

Plaintiff, Faith Deliverance Center ("Faith Deliverance"), initiated this action in Madison County, Tennessee Circuit Court against Defendants, Southern Mutual Church Insurance Co. ("Southern Mutual") and Tenco Services, Inc. ("Tenco"), on July 7, 2014. (Docket Entry ("D.E.") 1 at 1.) Defendants filed a notice of removal pursuant to 28 U.S.C. § 1446 on August 5, 2014. (*Id.*) On that same date, Defendants moved to dismiss the claims against Tenco pursuant to Federal Rule of Civil Procedure 12(b)(6), (D.E. 4), and two days later, Plaintiff sought to remand the case to state court, (D.E. 10). The parties have fully briefed the issues, and these motions are now ripe for decision.

**I. Background**

This case arises out of a dispute over the coverage provided for under an insurance contract. According to the complaint, Faith Deliverance, a Tennessee non-profit corporation, purchased an all-risk property insurance policy from Southern Mutual, a South Carolina

company. (D.E. 1-1 at ¶¶ 1–9.) During May 2013, a storm caused damage to some of Faith Deliverance's property covered under the policy. (*Id.* at ¶ 10.) After Plaintiff reported the loss, Southern Mutual engaged Tenco, a corporation formed and headquartered in Tennessee, to act as a claims adjuster in the matter. (*Id.* at ¶¶ 3, 12.) Ultimately, Faith Deliverance did not accept Tenco's valuation of the loss. (*Id.* at ¶ 13.)

On April 17, 2014, Southern Mutual filed a declaratory judgment action against Faith Deliverance in this Court seeking to resolve issues of coverage, causation, and the extent of its liability under the policy. *See* Complaint for Declaratory Judgment, *S. Mut. Church Ins. Co. v. Faith Deliverance Ctr.*, No. 14-1089 (W.D. Tenn. Apr. 17, 2014), D.E. 1. Plaintiff, in turn, filed its state court action alleging that Southern Mutual breached the insurance contract and that it and Tenco were liable for negligence in connection with the claim and appraisal process. (D.E. 1-1 at 3, 9–13.) This case was removed by Defendants to this Court and is the subject of the previously referenced motions.

## II. Analysis

As a baseline principle, "[f]ederal courts are tribunals of limited subject matter jurisdiction." *United States v. Field*, 756 F.3d 911, 914 (6th Cir. 2014) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Accordingly, this Court "possess[es] only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. "[T]he party requesting a federal forum . . . bears the burden of establishing federal jurisdiction." *Siding & Insulation Co. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 369 (6th Cir. 2014) (citations omitted).

Cases originating in state court can, in some circumstances, be removed to federal court. Title 28, section 1441(a) of the United States Code provides that

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Defendants only claim that original federal jurisdiction exists because of diversity of citizenship, as provided for in 28 U.S.C. § 1332. (*See* D.E. 1 at ¶ 10; D.E. 15 at 2.) In relevant part, § 1332 grants federal district courts jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." Courts have long interpreted § 1332 to require "complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). In addition, removal based on diversity is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Apparently, no party disputes that the amount in controversy requirement has been met or that complete diversity does not exist if Tenco was properly joined as a defendant. (*See* D.E. 1; D.E. 4; D.E. 10; D.E. 14; D.E. 15.) Under § 1441(b)(2), the case could not be removed to this Court if Tenco was a proper party, as it is a citizen of the forum state, Tennessee, for diversity purposes. *See* 28 U.S.C. § 1332(c) ("For the purposes of this section and section 1441 of this title . . . a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .").

Defendants, however, argue that Tenco was fraudulently joined, making federal jurisdiction proper. (D.E. 15 at 5.) Although complete diversity is generally required, "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Saginaw Hous.*

3

*Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). A party is fraudulently joined when "no colorable cause of action" exists against it. *Id.* (citing *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)). Although the term "fraudulent" may appear to put Plaintiff's purpose at issue, "the motive in joining a party is immaterial to the determination regarding fraudulent joinder." *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 168 (6th Cir. 2005) (citing *Jerome-Duncan*, 176 F.3d at 907). Instead, the party seeking removal has the burden to show "that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* (quoting *Coyne*, 183 F.3d at 492–93). The relevant inquiry is "whether there is arguably a reasonable basis for predicting that the . . . defendant could be liable." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 438 (6th Cir. 2012) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)) (internal quotation marks omitted). This standard is "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Id.* (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952–54 (6th Cir. 2011)).[1] Additionally, this Court "must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non[-]removing party." *Id.* (quoting *Coyne*, 183 F.3d at 493) (internal quotation marks omitted).[2]

---

[1] Some authority also supports fraudulent joinder where a plaintiff "does not intend to secure a judgment" against the non-diverse defendant. 14B Charles Alan Wright, et al., *Federal Practice & Procedure: Jurisdiction* § 3723 (4th ed. 2014) (gathering citations); *see also Alexander v. Elec. Data Sys. Corp.*, 870 F. Supp. 749, 752 (E.D. Mich. 1994)). The Sixth Circuit appears never to have explicitly adopted this ground for fraudulent joinder, and there is some question as to how it could be reconciled with the declaration that "the motive in joining a party is immaterial." *Boladian*, 123 F. App'x at 168 (citing *Jerome-Duncan*, 176 F.3d at 907). To the extent Defendants may contend that Plaintiff does not intend to obtain a judgment against Tenco, they have failed to meet their burden of establishing this fact.

[2] In the event of a factual dispute, the Court "may 'pierce the pleading' and consider summary judgment evidence, such as affidavits presented by the parties . . . for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias*, 695 F.3d at 433 (quoting *Walker*, 443 F. App'x at 952–56). However, as described more fully below, the *facts* bearing on whether Faith Deliverance has stated a colorable claim against Tenco are not in dispute. The parties agree, at least for purposes of the motions under consideration, that

Tenco, however, was not fraudulently joined in this action because Faith Deliverance Center has at least stated a *colorable* negligence claim against it under Tennessee law. In Tennessee, negligence requires proof of "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Parker v. Holiday Hospitality Franchising, Inc.*, ___ S.W.3d ___, 2014 WL 4494265, at *7 n.7 (Tenn. Sept. 12, 2014) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). The Tennessee Supreme Court generally defines "duty of care" as "a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm." *Cullum v. McCool*, 432 S.W.3d 829, 833 (Tenn. 2013) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). Moreover, duty represents "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 895 (Tenn. 1996) (quoting *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993)).

Defendants argue that independent insurance adjusters owe a duty of care only to the insurers they work for—not to insured parties. (D.E. 15 at 6–9.) Therefore, the argument goes, Southern Mutual does not have a viable negligence claim against Tenco because any such assertion fails as a matter of law. (*See id.*) In support of this argument, Defendants cite a number of cases and secondary sources finding that an independent adjuster owes no duty of care to the insured. *See Meineke v. GAB Bus. Servs., Inc.*, 991 P.2d 267, 270 (Ariz. Ct. App. 1999); *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 84 Cal. Rptr. 2d 799, 801–02 (Cal. Ct. App. 1999); *King*

---

Tenco acted as an independent adjuster on behalf of Southern Mutual in connection with the events at issue. (*See* D.E. 10-1 at 2; D.E. 15 at 3.) Further, Defendants have not argued the existence of "misstated or omitted discrete facts that would determine the propriety of joinder." *Walker*, 443 F. App'x at 953 (quoting *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)).

*v. Nat'l Sec. Fire & Cas. Co.*, 656 So. 2d 1338, 1339 (Fla. Dist. Ct. App. 1995) (per curiam); *Troxell v. Am. States Ins. Co.*, 596 N.E.2d 921, 925 n.1 (Ind. Ct. App. 1992); *Velastequi v. Exch. Ins. Co.*, 505 N.Y.S.2d 779, 782 (N.Y. Civ. Ct. 1986); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 586 S.E.2d 586, 588–89 (S.C. 2003); *Crocker v. Am. Nat. Gen. Ins. Co.*, 211 S.W.3d 928, 937 (Tex. App. 2007); *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 916–17 (Tex. App. 1997), *disapproved of on other grounds by Apex Towing Co. v. Tolin*, 41 S.W.3d 118 (Tex. 2001). Indeed, Defendants argue that the majority of jurisdictions do not impose a duty of care to the insured on an independent adjuster. (D.E. 15 at 6.)

Plaintiff counters that several cases have held that an independent adjuster owes a duty of care to the insured party. *See, e.g.*, *Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 288 (Alaska 1980); *Morvay v. Hanover Ins. Companies*, 506 A.2d 333, 335 (N.H. 1986); *Brown v. State Farm Fire & Cas. Co.*, 58 P.3d 217, 223 (Okla. Civ. App. 2002). Further, Faith Deliverance insists that some Tennessee authority supports the existence of such a duty. (D.E. 11 at 8.) In *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 915 (Tenn. Ct. App. 2000) (Koch, J.), the Court of Appeals noted in dicta that "the absence of a contract does not necessarily defeat the [plaintiff's] negligence . . . claims against [the independent adjusters]. . . . [C]ontracts are not the sole source of duty in negligence cases." Ultimately, however, the court did not determine "whether insureds may maintain . . . negligence . . . claims against adjusting companies," finding instead that the claims were untimely. *Id.*[3]

---

[3] Defendants also point to an opinion from this District determining that an insurance adjuster was fraudulently joined in an action by an insured against an insurance company. (D.E. 15 at 7–9.) That case, *Gilbert v. Nationwide Ins. Cos.*, 08-2681, 2009 WL 152465 (W.D. Tenn. Jan. 22, 2009), is inapposite. The plaintiffs in *Gilbert* did not plead a negligence claim against the adjuster; they only asserted causes of action "pursuant to Tennessee's bad faith statute and the Tennessee Consumer Protection Act." *Id.* at *1. Regarding duty specifically, the *Gilbert* decision noted that "[t]here [was] no evidence that [the adjuster] owed Plaintiffs an independent contractual duty," not that a plaintiff could not bring a negligence claim against an insurance adjuster under Tennessee law. *Id.* at *2.

There appears to be an unsettled question of Tennessee law as to whether an independent insurance adjuster could owe a duty to the insured. *See Heatherly*, 43 S.W.3d at 915. Because of the posture of this case, a decision on this issue by the Court is not necessary. The fraudulent joinder doctrine is clear: "ambiguities in the controlling . . . state law" must be resolved "in favor of the non[-]removing party." *Casias*, 695 F.3d at 438 (quoting *Coyne*, 183 F.3d at 493) (internal quotation marks omitted). Therefore, because the question of whether an independent adjuster can owe a duty to the insured must be resolved in Plaintiff's favor for purposes of this analysis, Tenco was not fraudulently joined on this ground.[4]

Beyond the issue of duty, Defendants argue that Plaintiff has no colorable claim against Tenco because it suffered no "damages as a result of Tenco's conduct." (D.E. 15 at 9.) Defendants contend that Faith Deliverance merely makes a "vague assertion" regarding injury caused by Tenco and that all relevant damages "stem from the failure to pay the appraisal award," for which, according to Defendants, Tenco was not responsible. (*Id.* at 11.) Defendants assert that Plaintiff only supported the damage element of its negligence claim against Tenco with the statement that "[a]s a result of Tenco's negligence, [Faith Deliverance] was damaged." (*Id.* (quoting D.E. 1-1 at ¶ 49).) However, this argument fails to reference Plaintiff's allegations in its complaint that

> [a]s a result of Southern Mutual and Tenco's failure to promptly adjust and investigate the Loss and pay the claim, the damage at the Insured Premises continued to worsen, ultimately resulting in substantial damage (staining, separation, etc.) to the tongue and groove wood ceiling in the sanctuary, buckling of the roof decking, and water saturation of significant portion of the exterior and interior components of the structure . . . .

---

[4] The ultimate determination as to whether, under Tennessee law, an independent adjuster owes a duty to the insured can be addressed by the parties on remand to Madison County Circuit Court.

7

(D.E. 1-1 at ¶ 15.) Moreover, Defendants, without providing supporting authority, argue that because "the damages suffered stem from [Southern Mutual's] failure to pay the appraisal award," they cannot be attributable to Tenco. (D.E. 15 at 11.) Tennessee law, however, recognizes the possibility that multiple actors can bear responsibility for the same damage: "As long as the defendant's conduct is a substantial factor causing the injury, that conduct need not be the sole cause nor the last cause of the injury." *Mason ex rel. Mason v. Metro. Gov't of Nashville & Davidson Cnty.*, 189 S.W.3d 217, 221 (Tenn. Ct. App. 2005) (citing *Lancaster v. Montesi*, 390 S.W.2d 217, 221 (Tenn. 1965); *Kroger Co. v. Giem*, 387 S.W.2d 620, 626 (Tenn. 1964)).[5] The Court expresses no opinion on the ultimate validity of Faith Deliverance's claim against Tenco; it may turn out that Tenco did not injure Plaintiff. Defendants, however, have not met their burden of showing that Plaintiff "could not have established a cause of action against" the adjuster for want of damages. *Boladian*, 123 F. App'x at 168 (quoting *Coyne*, 183 F.3d at 492–93).

Defendants also advance two separate but related arguments for fraudulent joinder concerning the relationship between Southern Mutual and Tenco. First, they maintain that Faith Deliverance does not have a colorable claim against Tenco because it was Southern Mutual's agent with regard to the events at issue, and an "agent does not incur individual liability unless it is shown that he intended to be personally responsible for his or her actions." (D.E. 5 at 5.) Second, they claim that because any damage Plaintiff suffered was a result of "corporate wrongs," Tenco is not liable to Faith Deliverance and was improperly joined. (D.E. 5 at 9–10.) Both lines of reasoning are flawed.

---

[5] Although Defendants attempt to frame this argument in terms of damages, (D.E. 15 at 10–11), the Court notes that the content of their reasoning also implicates causation.

Regarding the agency argument, Defendants have conflated the law. Tennessee jurisprudence does provide that, in the context of liability on a *contract*, "[w]hether an agent, dealing for a disclosed principal, binds himself depends on the intention of the parties . . . ." *Weeks v. Summerlin*, 466 S.W.2d 894, 899 (Tenn. Ct. App. 1970); *see also Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 636 (Tenn. Ct. App. 2002). However, it is well-established, in Tennessee and elsewhere, that "[a]n agent cannot escape liability for *tortious acts* . . . against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer." *Junkans v. Alamo Rentals, Inc.*, M2010-02628-COAR3CV, 2011 WL 5145763, at *4 (Tenn. Ct. App. Oct. 28, 2011) (emphasis added) (quoting *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 821 (Tenn. Ct. App. 1995)). Tenco's relationship with Southern Mutual would not prevent it from being individually liable on Faith Deliverance's negligence claim. This contention is, therefore, without merit.

Defendants' "corporate wrong" theory of fraudulent joinder is also incorrect, but it warrants discussion. In this Circuit, the notion that the citizenship of agent–defendants can be discounted for purposes of determining diversity jurisdiction if the injuries the plaintiff suffered were the result of "corporate wrongs" can be traced to a citation in *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940 (6th Cir. 1994). In *Alexander*, the plaintiff sued his would-be employer and two of its employees for violations of Michigan employment law. *Id.* at 941.[6] On appeal, after finding that no federal question jurisdiction existed, the Sixth Circuit remanded the case to the district court to determine whether the individual defendants were fraudulently joined. *Id.* at 949. The key inquiry was to be whether the plaintiff could maintain an action against them under Michigan law. *Id.* In ruling, the *Alexander* court cited to *Kruso v. International Telephone*

---

[6] Although the plaintiff sued the company under a common-law fraud theory, he did not advance this cause of action against the individual defendants. *Id.* at 942.

9

*& Telegraph Corp.*, 872 F.2d 1416 (9th Cir. 1989), including the following passage that appeared to form part of the *Kruso* court's rationale:

> [N]one of the individual defendants are alleged to have done anything wrongful except to cause the corporate defendants to act in an allegedly wrongful manner. The alleged wrongs of which plaintiffs complain are all corporate wrongs. Plaintiffs do not and apparently cannot allege that any of the individual defendants owed them any duty in their individual capacity, nor that they did any act in their individual capacity which violated any such duty or otherwise caused plaintiffs harm except as a result of corporate acts.

*Alexander*, 13 F.3d at 949 (alteration in original) (quoting *Kruso*, 872 F.2d at 1426). In actuality, the Ninth Circuit included this language, a quotation from the district court's opinion in the case, as an explanation of that court's reasoning—and not as any basis for the circuit court's decision. *See Kruso*, 872 F.2d at 1425–26. Moreover, as one court aptly noted, "[t]he *Alexander* panel did *not* adopt the quoted *Kruso* passage as its holding." *Wolf v. Bankers Life & Cas. Co.*, 519 F. Supp. 2d 674, 684 (W.D. Mich. 2007).

      The Sixth Circuit has apparently not considered this issue since *Alexander*. Subsequent district court opinions dealing with the "corporate wrong" theory can be categorized into two groups. One set has determined that certain agent–defendants were fraudulently joined because they did not participate in the relevant events to the extent necessary to be liable under the applicable law—sometimes explained in terms of "corporate wrongs." *See Gilbert*, 2009 WL 152465, at *2 ("There is no allegation in the Complaint that Stewart acted in any way which would create individual liability against her under Tennessee law. There is no evidence that the denial of Plaintiffs' insurance claim was anything more than a corporate wrong for which Nationwide, and not its employee, could be liable."); *Alexander v. Elec. Data Sys. Corp.*, 870 F. Supp. 749, 753 (E.D. Mich. 1994) ("In the instant case, plaintiff's complaint fails to specify any

actions on the part of defendant Jeros, and merely alleges that defendant Brechtelsbauer was 'part of the management team that interviewed plaintiff.' The complaint does not allege any individual wrongs by the defendants."). *Kruso* itself is similar to these cases; the Ninth Circuit found that the non-diverse defendants were fraudulently joined because "plaintiffs lack[ed] standing to sue" them. *Kruso*, 872 F.2d at 1427. Other opinions, however, have declined to apply the "corporate wrong" theory in circumstances where the agent–defendants *could* be liable under state law. *See Wolf*, 519 F. Supp. 2d at 684 ("[T]his court finds *Alexander* and *Kruso* to be of no value in ascertaining how the Michigan appellate courts would view the Wolf's claims against nondiverse defendant Nelson."); *Maysen v. Elec. Data Sys. Corp.*, CIV. A. 94-74607, 1995 WL 871185, at \*3 (E.D. Mich. Aug. 11, 1995) (noting that the corporate wrong theory did not apply because "plaintiff clearly has standing to sue [the individual defendant] and has stated a cause of action against [him]."); *Lawrence v. Elec. Data Sys., Inc.*, 94-73360-DT, 1994 WL 762217, at \*5 (E.D. Mich. Nov. 23, 1994) ("Defendants' express reliance upon *Alexander* and indirect reliance upon *Fletcher*[ *v. Adro Systems, Inc.*, 616 F. Supp. 1511 (E.D. Mich. 1985)] are misplaced. These cases stand for the proposition that a plaintiff cannot join his or her non-diverse supervisor, who was not involved in nor had any responsibility for personnel decisions affecting the plaintiff, in order to defeat diversity jurisdiction.").

Upon a review of these cases, one principle becomes clear: the fact that a plaintiff's injuries may be attributable to a "corporate wrong" does not necessarily establish the fraudulent joinder of a company's agents or employees. The standard is the same in these scenarios as it is in others—"whether there is arguably a reasonable basis for predicting that [the] defendant could be liable." *Casias*, 695 F.3d at 438 (quoting *Alexander*, 13 F.3d at 949) (internal quotation marks omitted). A litigant claiming fraudulent joinder must show that, after resolving all factual

questions and legal ambiguities in favor of the party opposing federal jurisdiction, no colorable claim exists against the non-diverse defendant under state law. *Id.* Fraudulent joinder arguments are therefore doomed to fail when they merely point to the existence of an employment or agency relationship without explaining why the non-diverse defendant could not be liable. Otherwise, "corporate wrongs" would swallow up a large area of the law of fraudulent joinder. One oblique phrase, improperly attributed and removed from its context, does not constitute the basis for a fundamental shift in doctrine. *See Wolf*, 519 F. Supp. 2d at 684 (noting that the "corporate wrong" language was not part of *Alexander*'s holding).

Defendants have failed to establish that Faith Deliverance lacks a colorable claim against Tenco. At most, Southern Mutual and Tenco have identified an area of uncertainty in Tennessee law. In the context of fraudulent joinder, however, this does not provide grounds to disregard Tenco's citizenship. *See Casias*, 695 F.3d at 438. Because fraudulent joinder is a jurisdictional inquiry, this Court will not set out to determine how Tennessee courts would resolve uncertainty in controlling state law, as it would under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), in considering the merits of a case where diversity jurisdiction was clear. *See Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 811 (8th Cir. 2003); *Shephard v. Allstate Ins. Co.*, C2-04-936, 2006 WL 745588, at *2 (S.D. Ohio Mar. 17, 2006). Rather, the Court will "remand the case, leaving the question of state law for the state courts to decide." *Wiseman v. Universal Underwriters Ins. Co.*, 412 F. Supp. 2d 801, 803 (S.D. Ohio 2005) (quoting *Filla*, 336 F.3d at 811).

### III. Conclusion

Based on the foregoing, the Court lacks subject matter jurisdiction over this case. Plaintiff's motion to remand is therefore GRANTED, and Defendants' motion to dismiss is

DENIED AS MOOT. Pursuant to 28 U.S.C. § 1447(d), orders remanding a case to the state court from which it was removed for want of subject-matter jurisdiction are not appealable.[7] Plaintiff's request for an award of attorneys' fees and costs is REFERRED to the magistrate judge for determination. Any objections to the magistrate judge's order shall be made within fourteen days after service of the order, setting forth particularly those portions of the order objected to and the reasons for the objections. Failure to timely assign as error a defect in the magistrate judge's order will constitute a waiver of that objection. *See* Fed. R. Civ. P. 72(a). The Clerk is DIRECTED, pursuant to 28 U.S.C. § 1447(c), to mail a certified copy of this order to the Clerk of the Madison County Circuit Court.

IT IS SO ORDERED this 17th day of November, 2014.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] "There are . . . several limited exceptions to the unreviewability of remands to state court," including where a district court makes "a substantive decision on the merits of a collateral issue." *Saginaw Hous. Comm'n*, 576 F.3d at 624 (quoting *Regis Assoc. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 194 (6th Cir. 1990)). This decision, however, merely makes an "assessment of fraudulent joinder . . . [and] remand[s] based on jurisdiction, not any sort of collateral order. Therefore, the remand order is unreviewable." *Id.* at 625 (citation omitted).